IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| STANFORD BRITTS, | ) | CASE NO.  1:15 CV 1267 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| STEVENS VAN LINES, INC., | ) | |
| | ) | |
| Defendants. | ) | MEMORANDUM AND OPINION |

This matter is before the Court upon several Motions filed by the parties after Plaintiff, Stanford Britts (hereafter "Mr. Britts") filed a putative Class Action Complaint against Defendant, Stevens Van Lines, Inc., (hereafter "Stevens") on June 24, 2015. (ECF #1).  Stevens filed a Counterclaim against Mr. Britts on December 18, 2015. (ECF #29).

Stevens' has filed a Motion for Partial Summary Judgment (ECF #49)[1] and Motion for Summary Judgment on Count I. (ECF #60).  Plaintiff, Stanford Britts, (hereafter "Mr. Britts"), filed an Opposition to the Motion for Partial Summary Judgment (ECF #55), and an Opposition to Defendant's Motion for Summary Judgment on Count I. (ECF #67).  Stevens filed a Reply to both Opposition Motions (ECF #56 and 71).  In addtion, Mr. Britts filed a Motion for Summary Judgment on the Defendant's Counterclaim.  (ECF #61).  Stevens filed its Opposition on December 1, 2016. (ECF #66).    Based on this briefing, the Court issued a Memorandum

---

[1] This Motion addressed Counts II and III of the Complaint only. (See ECF #49, p. 4).

Opinion and Order granting Defendant's Motion for Partial Summary Judgment; denying Defendant's Motion for Summary Judgment on Count I; granting Counter-Defendant Stanford Britts' Motion for Summary Judgment as to Counterclaim Counts I and III, and denying it as to Counts II and IV.  (ECF #74).

Following the issuance of that opinion, Counter-Defendant Britts sought to vacate the order as it related to the denial of summary judgment on Counterclaim Counts II and IV, because he had not had the opportunity to file a Reply brief on that issue.  (ECF #76).  The Court granted to motion to vacate, (ECF #77), and Mr. Britts filed his Reply brief.  (#79).  Having considered all of the briefing and the relevant law, the Court now finds that Counterclaim Counts II and IV should also be dismissed.

I.      Factual Background[2]

Stevens is a Minnesota corporation that operates as a moving company responsible for transporting property throughout the country. (ECF #1, ¶¶1 and 7).  Stevens leases vehicles from their owners and contracts with the owners to serve as movers and drivers.  Mr. Britts is an Ohio resident who on April 20, 2005, entered into an "Independent Contractor's Agreement" (the "Lease") with Stevens indicating that Mr. Britts was the owner of a 2000 Volvo and that he

---

[2] Except as otherwise noted, the factual summary is based solely upon the undisputed facts set forth in the parties' statements of facts, the Plaintiff's Complaint, and the affidavits and other evidence filed with the Court as part of the summary judgment motion briefing. Those facts which are contested and have some support through the submitted affidavits or other evidence will be addressed in the body of the opinion, and shall be construed in the light most favorable to the Plaintiff as required under the Summary Judgment standards.

-2-

granted the use of this vehicle to Stevens. (ECF #1-1).[3] This Agreement provides that Michigan law governs the contract. (*Id*. at ¶34).

Under federal law, authorized motor carriers, such as Stevens, may transport property in leased equipment only if the equipment is covered by a written lease that meets the requirements of the Truth in Leasing Regulations ("TIL"), 49 C.F.R. § 376.12; 49 C.F.R. § 376.11(a). If an authorized carrier fails to comply with those requirements, a person injured by that failure may bring an action for damages under 49 U.S.C. § 14704(a)(2), and recover attorney's fees under 49 U.S.C. § 14704(e). *Carney v. JNJ Exp., Inc.*, 10 F. Supp. 3d 848, 849–50 (W.D. Tenn. 2014).

According to the terms of the Lease, owner-operators are required to either purchase public liability/property damage ("PLPD") and Collision insurance coverages, or allow Stevens to pay for such coverage and then "charge the cost thereof to the account" of the owner-operators. (*See* ECF 1-1, ¶6). The latter arrangement is referred to as a "charge-back," which is a voluntary program offered by carriers that allow owner-operators to purchase products for their business without paying out-of-pocket.[4] In this case, Mr. Britts chose to allow Stevens to pay for his PLPD and Collision coverage, and Stevens would then itemize the cost of these coverages as a charge-back on the "driver settlement report" that Mr. Britts would receive monthly. (*See* ECF #60, p.1-2; ECF #1-1, ¶6.3).

On November 22, 2013, Mr. Britts was involved in a motor vehicle accident while operating under the Lease. (ECF #1, ¶20). Mr. Britts alleges that his vehicle sustained major damage and that he lost several thousand dollars in other property. (*Id*). Mr. Britts further

---

[3] Mr. Britts signed a similar Lease when he worked for Stevens from March 2000 through early 2005. (ECF #60, p. 1).

[4] *See* ECF #1-1, p. 4; 49 C.F.R. §376.12(h) and (j).

alleges that when he pursued an insurance claim, Stevens did not produce a copy of the requested insurance policy, and offered Mr. Britts a settlement that did not cover his alleged damages. (*See* ECF #67, pp. 10-11).  Mr. Britts alleges that in May and September of 2014, Stevens "at last admitted that there was no insurance policy providing Mr. Britts coverage; instead, Stevens claimed "[c]overage was provided by a contractual arrangement." (ECF #1, ¶24). Mr. Britts terminated the Lease with Stevens on August 8, 2014. (*See* ECF #65-2).

II.     Procedural Background

On June 24, 2015, Mr. Britts filed a putative Class Action Complaint against Stevens, alleging three causes of action: (1) violation of TIL regulations, brought under 49 U.S.C. § 14704(a); (2) breach of contract or unjust enrichment; and (3) fraud or negligent misrepresentation. (ECF #1).[5] Mr. Britts alleged in the Complaint that the Lease failed to specify charge-back costs for insurance, Stevens failed to obtain and provide insurance coverage and knew that "funds collected from the charge-backs to procure insurance coverage were not so used." (*Id.*). Stevens filed an Answer to the Complaint on August 17, 2015. (ECF #10).

On December 18, 2015, Stevens filed a Counterclaim against Mr. Britts alleging that Mr. Britts, directly and through Counsel, improperly and purposefully interfered with current and prospective business relationships and damaged its business and reputation. (ECF #29).  Mr. Britts filed a Motion to Dismiss the Counterclaim for failure to state a claim, which was denied in a Memorandum and Opinion issued by this Court on April 25, 2016. (ECF #36).  Mr. Britts filed an Answer to the Counterclaim on May 9, 2016. (ECF #37).

---

[5]     The Class proposed herein has not yet been certified as per Fed.R.Civ.Pro. 23.

As it relates to the putative Class Action Complaint, Stevens' filed its Motion for Partial Summary Judgment (ECF #49) on August 4, 2016, arguing that Mr. Britts' breach of contract and fraud claims fail because Stevens did in fact procure insurance coverage for its owner-operators.  Stevens also argues that Mr. Britts' claims in Count II and III do not sufficiently set forth causes of action, and Mr. Britts is merely trying to "incorporate by reference" the claims presented in Count I. (*See* ECF # 56).

Stevens filed its Motion for Summary Judgment on Count I (ECF #60) on November 1, 2016.  In summary, Stevens argues that Mr. Britts "cannot establish detrimental reliance or actual damages for a technical violation of the TIL regulations when the charge-backs were disclosed on settlement statements." (*Id*. at p. 10).  Stevens also argues that Mr. Britts has expressly and/or impliedly waived his right to damages relating to the charge-backs. (*Id*. at pp. 11-14).

Mr. Britts filed a Motion for Summary Judgment on Stevens' Counterclaim on November 1, 2016, arguing that Mr. Britts cannot be held liable for the alleged libel and other torts allegedly committed by his attorneys. (ECF #61-1).  Stevens filed its Opposition Brief on December 1, 2016, arguing that whether Plaintiff can be held vicariously liable, and whether his attorney's statements violated the Ohio Deceptive Trade Practices Act (ODTPA), or were defamatory, is a question of fact for the jury. (ECF #66).

III.    Jurisdiction

This Court has federal question jurisdiction over Mr. Britts' claims for violations of TIL regulations under 28 U.S.C. §1331, and has supplemental jurisdiction over Mr. Britts' state law

claims for breach of contract, unjust enrichment, fraud and negligent misrepresentation under 28 U.S.C. §1367.

IV.     Standard of Review

The summary judgment standard is well settled. Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Natl Satellite Sports, Inc. v. Eliadis, Inc.,* 253 F.3d 900, 907 (6th Cir.2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *(Id.* at 322). A mere scintilla of evidence is not enough. *Anderson,* 477 U.S. at 252; *McClain v. Ontario, Ltd.,* 244 F.3d 797, 800 (6th Cir.2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson,* 477 U.S. at 248–49; *Nat'l Satellite Sports,* 253 F.3d at 907. If the non-moving party

fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson,* 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1347 (6th Cir.1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *(Id.)*  Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *(Id.)* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *(Id.* at 248–52).

V.  Analysis

    A.  Truth In Leasing - Count I

The Truth-in-Leasing (hereafter "TIL") regulations,[6] promulgated under the Motor Carrier Act,[7] (hereafter "the Act"), govern motor carrier equipment leases between motor carriers and owner-operators of motor carrier equipment.  These regulations require that all leases between motor carriers and owners of motor carrier equipment be in writing and outline certain terms, such as the duration of the lease, compensation, the return of escrowed funds, a

---

[6]    49 C.F.R. §§ 376.1 *et seq.*

[7]    49 U.S.C.A. §§ 14701, 14102 and 14704.

listing of items for charge-back or deduction and duties relating to insurance coverage.[8] Furthermore, this Act provides for a private right of action for the enforcement of the regulations, either by injunctive relief or by an award of damages and attorney's fees.[9]

As it relates to charge-backs, § 376.12 of the TIL regulations states that the lease "shall clearly specify all items that can be charged back along with a recitation as to how the amount of each item is to be computed." It has been determined that "even if the name and amount of a charge-back is listed, the method by which the amount of the charge-back is computed is an essential component in fulfilling the requirements of § 376.12." *Owner-Operator Indep. Drivers Ass'n v. Landstar Sys. Inc.*, 541 F.3d 1278 (11th Cir. 2008).

Mr. Britts' theories of liability regarding how Stevens' charge-backs violated the TIL regulations has evolved over the course of these proceedings. Mr. Britts' original allegation was that Stevens charged owner-operators for insurance coverage it did not procure, but has since abandoned that allegation and now argues that Stevens violated TIL because it "directly profited" by over-charging the owner-operators for insurance coverage that it did procure.[10] Stevens counters alleging that not only did it not overcharge for insurance, it charged its owner-operators less than what it paid annually in insurance premiums. (*See* ECF #71, p. 4).

Mr. Britts also argues that the "arbitrary percentages of gross revenue" he was charged for insurance, 4.5% for PLPD and 0.5% for Collision, was not disclosed in the terms of the

---

[8] 49 C.F.R. §§ 376.11 and 376.12.

[9] 49 U.S.C.A. § 14704; *Owner-Operator Ind. Drivers Ass'n, Inc. v. Arctic Exp., Inc.*, 288 F.Supp.2d 895 (S.D.Ohio 2003).

[10] *See* ECF #67, p. 6 (claiming Stevens "secretly extracted" $327,808.00 from owner-operators).

Lease, which he claims violates the TIL regulations. (*See* ECF #67, pp. 7-8). Stevens claims that Mr. Britts "was aware of the insurance charge-backs and how they were calculated" by way of the monthly settlement statements. (ECF #60, p. 1). Stevens argues that Mr. Britts knew he was being charged 4.5% for PLPD and 0.5% for Collision from Mr. Britts monthly gross revenue. (*Id*. at p. 2). Clearly, there is a factual dispute as to whether Stevens violated the TIL regulation which requires a authorized carrier to set forth the method by which the amount of this charge-back was computed.

Mr. Britts also argues that Stevens charged its owner-operators for unauthorized coverages that were not enumerated in the Lease, and issued charge-backs for Warehouse, Crime and Umbrella policies. (*See* ECF #67, pp. 6-8). Mr. Britts alleges that Stevens obtained these unauthorized coverages to benefit the company, not its owner-operators. (*Id*. at p. 7). Stevens responds by claiming that it did not charge the owner-operators for Warehouse coverage, and did not have a Crime policy. It admits that it did issue a charge-back for Umbrella coverage, but argues that it was authorized because Mr. Britts knew of this charge-back. (*See* ECF #71, p.3-4).

These opposing statements regarding whether Stevens' violated the TIL regulations raise genuine issues of material fact that cannot be resolved by summary judgment. Stevens has not met its burden of showing the absence of genuine factual issues on these claims. *Celotex Corp.*, 477 U.S. at 323; Fed.R.Civ.P. 56(c). Viewing Stevens' summary judgment motion in the light most favorable to the non-moving party, factual issues exist in this matter that preclude summary judgment for Stevens on the TIL claim.

Stevens also argues it is entitled to summary judgment because Mr. Britts has waived his right to challenge the charge-backs, since the Lease requires owner-operators to dispute any

charges within 120 days of receiving the monthly settlement statement. (ECF #1-1, ¶ 35).[11]  This argument is unpersuasive, as it has been held that "Congress's substantive purpose in authorizing the [TIL] regulations was to protect owner-operators ... [and] ... public policy weighs strongly in favor or preventing contractual limitations on the ability of plaintiffs to bring suit to protect rights otherwise guaranteed by the [TIL] Regulations." *Al-Anazi v. Bill Thompson Transport, Inc.*, 2016 WL 3611886, at *6, 7 (E.D. Mich. July 6, 2016)(*citations omitted*).  Therefore, Stevens is not entitled to summary judgment based upon this contractual waiver argument.  For these reasons, Stevens' Motion for Summary Judgment as to Count I is DENIED. (ECF #60).

      B.      <u>Breach of Contract and Unjust Enrichment Claims - Count II</u>

Although Stevens is a Minnesota corporation,[12] and Mr. Britts is a resident of Ohio, the leasing contract between the parties states that Michigan law shall apply to enforcement of the contract.  To state a claim for breach of contract under Michigan law, once a valid contract has been established,[13] the plaintiff must prove: (1) the terms of the contract; (2) breach of those terms by the defendant; and (3) injury to the plaintiff resulting from the breach. *In re Brown*, 342 F.3d 620, 628 (6th Cir.2003).   Plaintiff's Second Cause of Action alleges that Stevens breached the terms of the lease when it "failed to obtain and provide insurance coverage" for the drivers, yet charged the drivers for coverage. (*See* ECF #1, ¶¶ 37 and 38).

Stevens' Motion for Summary Judgment sets forth evidence demonstrating that Stevens

---

[11]    Stevens does not argue that Mr. Britts' claim is barred by any statute of limitations under 49 U.S.C. § 14705.

[12]    The Complaint states that, although a Minnesota corporation, Stevens' principal executive offices are in Saginaw, Michigan.

[13]    Stevens does not dispute that a valid contract existed between the parties herein.  See ECF #49, p. 8.

-10-

had obtained PLPD and Collision coverage for its owner-operators.  (*See* ECF #49).  In fact, Mr. Britts admitted in later pleadings that Stevens procured PLPD and Collision coverage, but currently argues that the charge-backs and premiums assessed to the owner-operators violated the terms of the Lease. (*See* ECF #55).  These allegations are addressed in the TIL claim above, and were not a part of Mr. Britts allegations in relation to contract claim.[14] Stevens is entitled to judgment as a matter of law as it relates to Plaintiff's breach of contract claim.  Stevens has set forth sufficient evidence to show that there was no breach of the Lease provision that required Stevens to procure insurance for Mr. Britts, and that evidence is not disputed.  Any argument as to the procurement, adequacy, authorization or costs of coverages relating to the insurance procured by Stevens for Mr. Britts can be addressed within the scope of Mr. Britts' claim alleging violations of TIL regulations.  Therefore, Stevens is entitled to judgment as a matter of law on Plaintiff's breach of contract claim.

Additionally, there is no claim for unjust enrichment when there exists a valid contract covering the same subject matter. *See Iverson Indus. v. Metal Mgmt. Ohio, Inc*., 525 F.Supp.2d 911, 922 (E.D. Mich.2007).  There is no dispute that a contract addressing the issue of insurance coverage and payment did exist between the parties.  There fore, Stevens is entitled to judgment as a matter of law as it relates to the unjust enrichment claim.  For these reasons, Stevens' Motion for Summary Judgment as to Count II is GRANTED.

       C.       <u>Fraud and Negligent Misrepresentation Claims - Count III</u>

Mr. Britts' fraud and negligent misrepresentation are based solely on Mr. Britts claims

---

[14] Mr. Britts attempted to amend his Complaint to add these allegations to his breach of contract claim, however, the Court denied his motion to amend on this basis. (ECF #54).

that Stevens did not procure insurance, yet told its owner-operators it had procured insurance. (*See* ECF #1).   As set forth above, following discovery, there is no dispute that Stevens did, in fact,  procure PLPD and Collision coverage for its owner-operators,  Mr. Britts cannot demonstrate that Stevens made false statements or representations to the owner-operators by collecting charge-backs for insurance it knew or should have known it wasn't procuring, when the evidence is undisputed that Stevens did, in fact, procure the insurance connected to the charge-back fees.  Therefore, Stevens' Motion for Summary Judgment as to Count III is GRANTED.

> D. Stevens' Counterclaim

On December 18, 2015, Stevens filed a Counterclaim against Mr. Britts. (ECF #29). Count I of Stevens' Counterclaim alleges Tortious Interference with Business Relationships; Counts II and III allege violations of the Ohio Deceptive Trade Practice Act, Ohio Rev. Code § 4165.03(A)(1) and (2); and Count IV alleges Defamation.  On November 1, 2016, Mr. Britts filed a Motion for Summary Judgment. (ECF #61).  Stevens filed a Brief in Opposition, indicating that "Stevens does not oppose partial summary judgment with respect to Counts I and III." (ECF #66, p.2).[15] Therefore, Mr. Britts' Motion for Summary Judgment is GRANTED on Counts I and III.  A discussion on the remaining two claims follows below.

---

[15] Stevens' request for "an order requiring LGM to immediately remove the SVL Mark from their website" is now moot, as LGM removed the Mark from the website on or about December 19, 2015. (*See* ECF #61-1, p. 4).  The allegation that Mr. Britts handed out LGM business cards to Stevens' owner-operators and made false and misleading statements about Stevens alleged failure to obtain proper insurance coverage, appears to fall under the tortious interference claim, which Stevens agreed was ripe for summary judgment.  See, ECF #66 (Stevens does not address this allegation in its Opposition Brief).

Counterclaim Count Two alleges that Mr. Britts' lawyers' firm Landskroner, Grieco & Merriman LLC ("LGM")  disparaged Stevens by means of false statements, and that Mr. Britts is vicariously liable for this alleged disparagement.  It seeks injunctive relief under O.R.C. § 4165.03(A)(1), and reasonable attorneys' fees.  Counterclaim Count Four alleges that Mr. Britts, both directly and through LGM, has made false and defamatory statements about Stevens, including misstatements of law and fact relating to Stevens' business.  Stevens has since rescinded any allegation that Mr. Britts is directly liable for defamation.  As in Count II, Stevens claims against Mr. Britts now require a finding that he is vicariously liable for the statements made by his attorneys.  (ECF #66, pp. 2, 4).  The parties both appear to presume that Ohio law applies to this issue, and accordingly, we will consider this claim under Ohio law.

Under Ohio law, a principal is vicariously liable for its agent's conduct only when the agent has consented to give the principal the right of control over that conduct, and only within the delegated scope of authority.   In the context of the attorney/client relationship, the Ohio Supreme Court has held that a client "is vicariously liable for its attorney's defamatory statements only if the client authorized or ratified the statements."  *Am. Chem. Soc'y v. Leadscape, Inc.*, 133 Ohio St. 3d 366 (2012).  Stevens has admitted that in the case of attorney/client relationships, generally the retention of an attorney presumes "only a limited agency relationship to engage in necessary and proper acts."  *In re Plant v. Trust Co. Of Columbus*, 168 Ga. App. 909, 910 (1983); (ECF #66, fn. 4).   Further, Stevens agrees that an attorney's intentional misconduct cannot be imputed to his client.  (ECF #366, fn. 4).   It tries to distinguish these cases premise by arguing that a client may be vicariously liable for his attorney's unintentional torts and violations of statutes, implying that this is what is alleged in

-13-

this case.  This does not follow, however.  There are cases where in the context of a litigation, an attorney's negligent failure to file or follow Court orders can be held against the client.  However, the parties have not cited, and this Court is not aware of any cases in which an attorney's unintentional tort or statutory violation, has been held against a client in the absence of a clear showing of client control or direction.

The only evidence Stevens' cites in support of their allegation that Mr. Britts authorized the communications by LGM at issue in this case is Mr. Britts' own declaration.  (ECF #66).  The Declaration states that Mr. Britts, in disclosing information relevant to his case, provided his lawyers with two emails he received from Stevens Van Lines.  Stevens had previously sent that email to Mr. Britts and several dozen other drivers whose email addresses were contained in the "To" line of the email.  Mr. Britts also stated that he "understood that the law firm hoped to contact other drivers to gather information."  These are the only two statements referenced by Stevens in support of their arguments against Mr. Britts' Motion for Summary Judgment on their remaining Counterclaims.

These statements are woefully inadequate to establish any authorization or ratification of the content of communications between LGM and other drivers, or the content of LGM's website.  There is no evidence to suggest that the emails that included the driver information were provided to LGM specifically for the purpose of putting them in touch with those drivers, let alone for the purpose of allowing LGM to send the specific communications at issue here.  Further, there is no evidence to suggest that Mr. Stevens expected or authorized any communication with other drivers other than for the purpose of "gathering information" for his case.  In addition, Stevens' fails to contest the other statements in Mr. Britts' declaration

-14-

including the following:

- "I did not control or try to control the details of how they [contacted other drivers] or what they said to the drivers"

- "I left [the details] to the professional judgment of my lawyers, and they did not agree to give me control over the details of how they exercised their professional judgment in gathering information or otherwise in representing me."

- "I did not hear any conversations between any of my lawyers and any driver."

- "I did not suggest to my lawyers what they should say if they talked to other drivers and I did not know what they intended to say if they talked to other drivers."

- "If my lawyers did talk to other drivers, I do not know what they said."

- "I did not read the content of my lawyer's email before it was sent to those driver email addresses.  I did not tell or suggest to my lawyer what to say in that email, and I did not know what the email was going to say."

- "I did not play any role in drafting, editing, or approving the content of that email before it was sent.  Again, the content of that email was up to the professional judgment of my lawyers, and I did not control how they exercised their professional judgment."

(ECF # 61-2).  All of these statements remain uncontested, and are more than sufficient to show that Mr. Britts did not exercise control over LGM's challenged action, and did not authorize or ratify the communications at issue in this case.   Stevens' argument that giving a list of drivers to his attorneys somehow was a blanket authorization from Mr. Britts to his attorneys to contact those drivers and communicate with them in any fashion, including by giving them allegedly false information, does not comport with the law or common sense.  There is nothing actionable in providing relevant information, identifying people with potential relevant information, or expecting an attorney to contact people with potentially relevant information in an attempt to gather information about your own case.  There is no evidence that Mr. Britts did anything

-15-

beyond provide relevant factual information to his attorneys in an attempt to assist in the investigation of his own case.

Therefore, there is no evidence that could support a finding that Mr. Britts is vicariously liable for the LGM communications Stevens has challenged.  Absent vicarious liability Stevens admits that these claims must be dismissed.  Therefore, Summary Judgment is GRANTED on Counterclaims II and IV.   There are no remaining Counterclaims.

VI.	Conclusion

For the reasons set forth herein, Stevens' Motion for Partial Summary Judgment (ECF #49) is GRANTED (Counts Two and Three of the Complaint are dismissed); Stevens' Motion for Summary Judgment on Count I (ECF #60) is DENIED; and Mr. Britts' Motion for Summary Judgment on Stevens' Counterclaim (ECF #61) is GRANTED.     Trial is set for April, 24, 2017 at 8:30 a.m.  A Trial Order will issue.

IT IS SO ORDERED.

    /s Donald C. Nugent
Donald C. Nugent
United States District Judge

Date:   January 27, 2017